IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JOSEPH LYBERGER,** : | |
|    Plaintiff, : | |
| : | |
| v. : | Case No. _____ |
| : | |
| **THE OHIO STATE UNIVERSITY,** : | Judge _____ |
| By and through its Board of Trustees : | |
| : | |
| **QUINN TEMPEL, individually** : | |
| **CAREY HOYT, individually** : | |
| **ALLAN WILLIAMS, individually,** : | |
| : | |
| **JOHN DOES**, 1 - 3 | |
| | |
|    Defendants. | |

## COMPLAINT

Plaintiff Joseph Lyberger, by and through counsel, states as follows:

### I. INTRODUCTION

1. This action challenges The Ohio State University's systemic failure to protect an employee who reported sexual harassment, workplace threats, and retaliatory treatment, and OSU's unlawful termination of that employee shortly after he engaged in protected activity.

2. Although Plaintiff consistently performed his job well, OSU ignored his repeated reports of escalating harassment and threats from a female coworker and failed to investigate under Title VII, Title IX, or its own policies.

3. Instead of correcting the unsafe and retaliatory environment, OSU terminated Plaintiff based on shifting, inconsistent, and unsupported explanations that were pretext for discrimination and retaliation.

4. Throughout this process, OSU applied gendered assumptions about credibility, aggression, and victimhood that disadvantaged Plaintiff because he is male. OSU presumed Plaintiff's guilt based on sex-based stereotypes while affording female accusers a corresponding presumption of credibility, regardless of contradictory evidence.

5. Plaintiff seeks all remedies available under Title VII, Title IX, 42 U.S.C. Section 1983, and other applicable law.

## II. JURISDICTION AND VENUE

6. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 et seq., and 42 U.S.C. Section 1983.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343.

8. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because the events giving rise to this action occurred in Franklin County, Ohio, and Defendants reside and conduct business in this District.

9. Plaintiff exhausted all administrative prerequisites to suit under Title VII. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 532-2026-00705, naming The Ohio State University.

10. On December 4, 2025, the United States Department of Justice issued Plaintiff a Notice of Right to Sue. This action is filed within ninety days of receipt of that notice.

## III. PARTIES

11. Plaintiff Joseph Lyberger is an adult resident of Lewis Center, Ohio.

12. Defendant The Ohio State University is a public university and employer within the meaning of Title VII of the Civil Rights Act of 1964 and a recipient of federal financial assistance

subject to Title IX of the Education Amendments of 1972. The Ohio State University operates by and through its Board of Trustees and maintains its principal place of business in Columbus, Ohio.

13. Defendant Quinn Tempel was, at all relevant times, Plaintiff's supervisor within the Ohio State University Athletics Department. Defendant Tempel had supervisory authority over Plaintiff and received Plaintiff's reports concerning workplace conduct. Defendant Tempel is sued in his individual capacity.

14. Defendant Carey Hoyt was, at all relevant times, the Deputy Director of Athletics at The Ohio State University. Defendant Hoyt had authority over Athletics Department personnel and workplace matters and participated in meetings concerning Plaintiff following his complaints. Defendant Hoyt is sued in her individual capacity.

15. Defendant Allan Williams was, at all relevant times, the Director of Resolutions for The Ohio State University Office of Civil Compliance. Defendant Williams was responsible for reviewing and resolving internal civil rights complaints and served as a decisionmaker with respect to Plaintiff's reports. Defendant Williams is sued in his individual capacity.

16. Defendants John Does 1-3 are officials, investigators, or decisionmakers employed by The Ohio State University who received Plaintiff's complaints or participated in investigatory or disciplinary decisions relating to Plaintiff. Their identities are presently unknown and will be substituted when discovered. These Defendants are sued in their individual capacities.

### IV. FACTUAL ALLEGATIONS

**A. Employment and Performance**

17. Plaintiff was employed by The Ohio State University as a Defensive Analyst for the football program from 2021 until his termination on April 23, 2025.

18. During his employment, Plaintiff maintained an excellent professional reputation, consistently received strong performance reviews, and had no disciplinary history. He was regarded as a dedicated and well-respected member of the Athletics Department.

**B. Initial Harassment and Rejected Sexual Advances**

19. In early 2023, administrative assistant Madison Lowe began engaging in inappropriate workplace conduct toward Plaintiff, including flirtatious behavior and sexually charged interactions.

20. In February 2023, at a team-related event, Lowe became intoxicated and made public romantic overtures toward Plaintiff. These advances were unwelcome and unsolicited.

21. Plaintiff did not reciprocate Lowe's advances. After Lowe was reprimanded for her conduct at the February 2023 event, her previously friendly relationship with Plaintiff deteriorated and became hostile.

22. Lowe's transition from unwelcome sexual attention to retaliatory hostility followed directly from Plaintiff's rejection of her advances. This pattern of conduct, beginning with unwelcome sexual behavior and escalating to retaliation upon rejection, constitutes sex-based harassment.

**C. Escalating Retaliation and Threats**

23. On June 24, 2023, while Plaintiff was hosting a recruiting event, Lowe and her friend Kayla Hackenberg, an OSU staff member assisting with recruiting and administrative operations, arrived uninvited and began bothering Plaintiff's guests.

24. When asked to leave, Lowe and Hackenberg became angry and stated they had "evidence" against Plaintiff and would "turn [him] in to a higher authority."

25. On August 2, 2023, Lowe confronted Plaintiff and stated, "I am going to ruin your career."

26. Plaintiff immediately reported this threat to his supervisor, Defendant Quinn Tempel, who took no corrective action.

27. Plaintiff then reported the matter to Mark Pantoni, who instructed Plaintiff to file a formal complaint with Human Resources.

28. Plaintiff filed a written Human Resources complaint on August 5, 2023.

**D. Retaliatory Complaints and Biased Investigations**

29. Within three days of Plaintiff filing his complaint, on August 8, 2023, Lowe and Hackenberg filed retaliatory complaints falsely alleging that Plaintiff shoved Hackenberg and harassed Lowe, including false claims that Plaintiff contacted Lowe after being told to stop and spread rumors about her.

30. OSU investigated those complaints and found insufficient evidence to substantiate any of the allegations.

31. When Plaintiff filed his own retaliation complaint, OSU dismissed it without explanation.

32. On January 12, 2024, OSU issued an investigative report concluding there was no evidence of workplace violence, noting that the alleged incident did not occur on school property and that neither Lowe nor Hackenberg reported fear in the workplace.

33. Despite these findings, Lowe and Hackenberg continued to make false allegations against Plaintiff.

34. On May 20, 2024, OSU issued another report concerning Lowe's harassment allegations, again finding insufficient evidence of any policy violation.

**E. Continued False Accusations**

35. Plaintiff underwent surgery on May 22, 2024, was out of the office until June 3, 2024, and thereafter worked largely from home.

36. While Plaintiff was on medical leave, Lowe falsely accused him of assaulting her on June 2, 2024, an allegation disproven by text messages confirming Plaintiff was not on campus that day.

37. When staff returned from summer break on August 1, 2024, Lowe intentionally bumped into Plaintiff in a hallway, spilling his coffee, then loudly stated, "Do not touch me," upon noticing a witness.

38. Lowe subsequently filed an HR complaint falsely alleging that Plaintiff struck her buttocks. A witness later confirmed Plaintiff did not touch Lowe and was holding a coffee cup and papers at the time.

39. One week later, Lowe filed another complaint asserting Plaintiff was "lingering" near her office, despite giving inconsistent accounts of the alleged conduct.

**F. Athletics Department Leadership Involvement**

40. After Plaintiff engaged in protected activity by filing formal complaints, Athletics Department leadership became directly involved in meetings and discussions concerning Plaintiff.

41. Defendant Carey Hoyt, Deputy Director of Athletics, participated in meetings with Plaintiff, Defendant Tempel, and Madison Lowe following Plaintiff's reports. During this time, Defendant Hoyt was aware that Lowe violated a non-contact directive but failed to enforce it or take corrective action.

42. Instead, Defendant Hoyt threatened Plaintiff regarding his at-will employment status in response to Plaintiff's protected activity, warning him that his employment could be terminated.

43. Following Plaintiff's report, Defendant Hoyt filed her own report after the fact, further escalating the retaliatory process and contributing to adverse action against Plaintiff.

**G. Hidden Camera Surveillance and Fabricated Evidence**

44. Later in 2024, Hackenberg secretly installed a hidden video camera in the office without Plaintiff's knowledge or authorization, concealing it within decorations.

45. On December 26, 2024, Hackenberg filed an HR complaint on Lowe's behalf falsely alleging that Plaintiff spat in Lowe's water bottle and damaged her keyboard, relying on heavily edited video clips.

46. The unedited footage was never produced, and Hackenberg later admitted she deleted the account associated with the camera, destroying the original files.

47. The edited clips showed Plaintiff moving an open tequila decanter blocking his workspace on December 20, 2024, and wiping residue from a desk on December 21, 2024, before laminating materials.

48. Plaintiff's supervisor, Larry Johnson, confirmed Plaintiff was assigned to that office and authorized to use the desk shown in the footage.

**H. Biased Adjudication and Termination**

49. Despite clear evidence that the complaints were false and retaliatory, OSU placed Plaintiff on administrative leave and convened an internal hearing.

50. In early 2025, OSU found Plaintiff responsible for harassment and stalking based solely on altered video footage and retaliatory complaints.

51. Plaintiff's complaints were reviewed by the Office of Civil Compliance. Defendant Allan Williams, then Director of Resolutions, served as the decisionmaker responsible for evaluating and resolving Plaintiff's reports.

52. Despite evidence supporting Plaintiff's claims, including witness testimony and documentary evidence, Defendant Williams dismissed Plaintiff's complaints in their entirety. Defendant Williams did so while permitting retaliatory complaints against Plaintiff to proceed.

53. Plaintiff's appeal was denied.

54. On April 23, 2025, OSU terminated Plaintiff's employment and marked him as not eligible for rehire.

55. After Plaintiff's termination, ESPN published an article portraying him as a sexual harasser, severely damaging his professional reputation and ending his coaching career.

### *I. Sex Stereotyping and Gendered Assumptions*

56. Throughout the investigatory and disciplinary process, OSU applied sex-based stereotypes that disadvantaged Plaintiff because he is male.

57. OSU presumed that Plaintiff, as a male accused of harassment by female coworkers, was inherently less credible and more likely to have engaged in misconduct. Conversely, OSU afforded female accusers a presumption of truthfulness despite documented inconsistencies, contradictions, and affirmative evidence of fabrication.

58. OSU's investigators and decisionmakers applied stereotyped assumptions about male aggression and female victimhood that influenced their evaluation of evidence and credibility determinations.

59. These gendered assumptions caused OSU to credit accusations that were internally inconsistent, contradicted by witnesses, disproven by documentary evidence, or affirmatively refuted by OSU's own investigative findings.

60. OSU's reliance on sex-based stereotypes, rather than objective evaluation of evidence, constitutes discrimination based on sex in violation of Title VII.

## V. CLAIMS

### COUNT I
### Title VII Sex Discrimination (Sex Stereotyping)

61. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

62. Plaintiff is a member of a protected class based on sex (male) within the meaning of Title VII.

63. Throughout Plaintiff's employment and the handling of complaints against him, Defendant The Ohio State University subjected Plaintiff to disparate treatment because of his sex.

64. OSU discriminated against Plaintiff by applying sex-based stereotypes in its investigatory and disciplinary processes. OSU presumed Plaintiff's guilt based on stereotyped assumptions about male behavior while affording female accusers heightened credibility based on stereotyped assumptions about female victimhood.

65. Female employees Madison Lowe and Kayla Hackenberg repeatedly made accusations against Plaintiff that were internally inconsistent, contradicted by witnesses, disproven by documentary evidence, or affirmatively refuted by OSU's own investigative findings.

66. Despite multiple investigative reports concluding there was insufficient evidence of harassment, workplace violence, or policy violations by Plaintiff, OSU continued to treat Plaintiff as culpable and escalated disciplinary measures against him.

67. In contrast, OSU failed to meaningfully address Plaintiff's complaints of sexual harassment, retaliatory threats, false accusations, and gender-based hostility, dismissing his reports without explanation or corrective action.

68. OSU's disparate treatment of Plaintiff was not based on legitimate, nondiscriminatory reasons but instead reflected stereotyped presumptions about credibility and culpability based on sex.

69. Rather than providing equal treatment and a fair investigatory process, OSU subjected Plaintiff to biased investigations, ignored exculpatory evidence, relied on manipulated or incomplete materials, and imposed discipline unsupported by the factual record.

70. OSU ultimately terminated Plaintiff's employment based on allegations it knew or should have known were false, retaliatory, or unsupported, while ignoring evidence that Plaintiff was the victim of harassment and retaliation.

71. As a direct and proximate result of OSU's sex-based discrimination, Plaintiff suffered loss of employment, loss of career opportunities, emotional distress, reputational harm, and other damages.

## COUNT II
### Title VII Hostile Work Environment

72. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

73. Plaintiff was subjected to unwelcome conduct in the workplace based on sex, including inappropriate romantic advances, sexually charged behavior, retaliatory hostility following rejection of those advances, false accusations, and explicit threats to his career.

74. The hostile work environment arose directly from Lowe's unwelcome sexual advances and Plaintiff's rejection of those advances. Lowe's conduct transitioned from unwelcome sexual attention to sustained retaliatory hostility because Plaintiff did not reciprocate her romantic interest.

75. The harassment Plaintiff endured was severe and pervasive. It included repeated threats to "ruin" his career, fabricated allegations of assault and stalking, intentional physical contact designed to provoke disciplinary action, and a sustained campaign of false complaints intended to isolate, discredit, and remove him from his position.

76. This conduct unreasonably interfered with Plaintiff's work performance and altered the terms, conditions, and privileges of his employment by creating an intimidating, hostile, and abusive work environment.

77. Defendant The Ohio State University knew or should have known of the harassment. Plaintiff repeatedly reported the conduct to his supervisor, senior Athletics Department officials, and Human Resources.

78. Despite having actual knowledge of the harassment and retaliation, OSU failed to take prompt, thorough, or effective remedial action. OSU dismissed Plaintiff's complaints, ignored corroborating evidence and witness testimony, and permitted the harassment to escalate over time.

79. Instead of protecting Plaintiff, OSU allowed false and retaliatory complaints to accumulate, subjected Plaintiff to biased investigations, and ultimately removed him from the workplace.

80. OSU's failure to intervene emboldened the harassing conduct and signaled institutional tolerance of a hostile work environment.

81. As a direct and proximate result of OSU's conduct, Plaintiff suffered emotional distress, humiliation, loss of professional standing, and other damages.

## COUNT III
### Title VII Retaliation

82. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

83. Plaintiff engaged in protected activity under Title VII by reporting sexual harassment, sex-based hostility, retaliatory threats, and discriminatory treatment to his supervisor, senior Athletics Department officials, and Human Resources.

84. Defendant The Ohio State University had actual knowledge of Plaintiff's protected activity.

85. After Plaintiff engaged in protected activity, OSU subjected him to materially adverse actions, including dismissing his complaints, permitting false and retaliatory accusations to proceed, placing him on administrative leave, conducting biased and one-sided investigations, and ultimately terminating his employment.

86. The adverse actions taken against Plaintiff would have dissuaded a reasonable employee from making or supporting a charge of discrimination.

87. There was a direct causal connection between Plaintiff's protected activity and OSU's adverse actions. Plaintiff's termination occurred shortly after he renewed his complaints, and OSU's treatment of Plaintiff escalated following each instance in which he sought protection or accountability.

88. Plaintiff would not have been terminated but for his protected activity. OSU's stated reasons for its actions were false, inconsistent, and pretextual. OSU relied on allegations it knew or should have known were retaliatory, unsupported, or contradicted by its own investigative findings.

89. Rather than addressing the underlying harassment and retaliation, OSU punished Plaintiff for reporting unlawful conduct and for attempting to protect himself from a hostile work environment.

90. As a direct and proximate result of OSU's retaliation, Plaintiff suffered loss of employment, loss of career opportunities, emotional distress, reputational harm, and other damages.

## COUNT IV
### Title IX Sex Discrimination (In the Alternative)

91. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

92. This Count is pled in the alternative to the extent Title VII does not provide a complete remedy for the conduct alleged herein.

93. Defendant The Ohio State University is a recipient of federal financial assistance and is therefore subject to the requirements of Title IX of the Education Amendments of 1972.

94. Plaintiff was subjected to sex-based harassment, hostile treatment, and adverse employment actions while employed by OSU.

95. OSU had actual knowledge of sex-based misconduct directed at Plaintiff, including unwanted sexual advances, retaliatory threats, fabricated accusations, and a pattern of hostile conduct following Plaintiff's rejection of such advances.

96. Despite this actual knowledge, OSU responded with deliberate indifference by failing to conduct fair and meaningful investigations, disregarding exculpatory evidence and witness testimony, failing to implement protective measures, and permitting known harassment and retaliation to continue.

97. OSU's response to Plaintiff's reports was clearly unreasonable in light of the known circumstances. OSU ignored its own investigative findings, credited inconsistent and unsupported allegations, and allowed biased disciplinary proceedings to proceed against Plaintiff.

98. OSU's actions and inactions deprived Plaintiff of equal access to the benefits of employment, professional advancement, and participation in educational programs and activities on the basis of sex.

99. OSU's deliberate indifference to known sex-based harassment caused Plaintiff to suffer loss of employment, loss of professional opportunities, emotional distress, and reputational harm.

100. As a direct and proximate result of OSU's sex-based discrimination in violation of Title IX, Plaintiff suffered damages and is entitled to all relief available under law.

## COUNT V
### Title IX Retaliation (In the Alternative)

101. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

102. This Count is pled in the alternative to the extent Title VII does not provide a complete remedy for the conduct alleged herein.

103. Plaintiff engaged in protected activity under Title IX by reporting sex-based harassment, sexual misconduct, retaliatory threats, and discriminatory treatment while employed by The Ohio State University.

104. Defendant The Ohio State University had actual knowledge of Plaintiff's protected Title IX activity.

105. After Plaintiff engaged in protected activity, OSU subjected Plaintiff to materially adverse actions, including ignoring his complaints, permitting retaliatory and fabricated accusations to proceed, placing him on administrative leave, conducting biased and one-sided investigations, and ultimately terminating his employment.

106. OSU's actions were sufficient to dissuade a reasonable person from reporting sex-based misconduct or participating in a Title IX process.

107. There was a direct causal connection between Plaintiff's protected activity and OSU's adverse actions. OSU's treatment of Plaintiff escalated after each report of harassment or retaliation, and his termination followed closely after he renewed his complaints.

108. OSU's stated reasons for its actions were false, inconsistent, and pretextual. OSU relied on retaliatory allegations and manipulated or incomplete evidence rather than addressing the underlying sex-based misconduct.

109. Rather than protecting Plaintiff from retaliation as required under Title IX, OSU punished him for reporting sex discrimination and for attempting to safeguard his rights.

110. As a direct and proximate result of OSU's retaliation in violation of Title IX, Plaintiff suffered loss of employment, loss of career opportunities, emotional distress, reputational harm, and other damages.

**COUNT VI**
**42 U.S.C. Section 1983 Equal Protection (Against Individual Defendants)**

111. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

112. At all relevant times, Defendants Quinn Tempel, Carey Hoyt, and Allan Williams were acting under color of state law as officials and employees of The Ohio State University.

113. Plaintiff was intentionally treated differently from similarly situated employees on the basis of sex.

114. Plaintiff reported sexual harassment, retaliatory threats, and sex-based hostility after rejecting inappropriate conduct by a female coworker. Following those reports, Plaintiff was subjected to escalating retaliation, biased investigations, and adverse employment action.

115. Defendant Quinn Tempel, Plaintiff's supervisor, had actual knowledge that Plaintiff reported a threat to his career and ongoing harassment. Despite having authority to intervene, protect Plaintiff, or initiate corrective action, Defendant Tempel failed to take reasonable steps to stop the retaliation or prevent further harm. Defendant Tempel's deliberate inaction, in the face of known constitutional violations, facilitated the deprivation of Plaintiff's equal protection rights.

116. Defendant Carey Hoyt, Deputy Director of Athletics, had authority over personnel matters and workplace conduct within the Athletics Department. After Plaintiff engaged in protected activity, Defendant Hoyt participated in meetings concerning Plaintiff, ignored violations of a non-contact directive, threatened Plaintiff regarding his at-will employment status, and filed a report after Plaintiff's report in a retaliatory manner. Defendant Hoyt's actions directly contributed to the escalation of retaliation and adverse employment action against Plaintiff.

117. Defendant Allan Williams, Director of Resolutions for the Office of Civil Compliance, served as a decisionmaker responsible for resolving Plaintiff's civil rights complaints. Defendant Williams dismissed Plaintiff's complaints in their entirety despite evidence supporting his claims, while permitting retaliatory complaints against Plaintiff to proceed. In doing so,

Defendant Williams ratified a biased investigatory process and unequal enforcement of civil rights protections.

118. Each Defendant knew or should have known that Plaintiff was being treated differently because of his sex and that the investigatory and disciplinary processes applied to Plaintiff were unfair, one-sided, and retaliatory. Despite this knowledge, Defendants failed to intervene and instead facilitated or ratified the deprivation of Plaintiff's constitutional rights.

119. Defendants' actions and omissions constituted deliberate indifference to Plaintiff's right to equal protection under the law. The right of a public employee to be free from sex-based discrimination, retaliation, and unequal treatment under the Equal Protection Clause of the Fourteenth Amendment was clearly established at all relevant times.

120. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of equal protection of the laws, lost his employment, suffered damage to his professional reputation, experienced emotional distress, and sustained economic harm.

121. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief available under 42 U.S.C. Section 1983.

## COUNT VII
**42 U.S.C. Section 1983 Procedural Due Process (Against Individual Defendants)**

122. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

123. At all relevant times, Defendants Quinn Tempel, Carey Hoyt, and Allan Williams were acting under color of state law as officials and employees of The Ohio State University.

124. Plaintiff had a protected property interest in continued employment with The Ohio State University. Plaintiff had a reasonable expectation of continued employment based on his tenure, performance history, and the absence of any prior disciplinary action.

125. Alternatively, Plaintiff had a protected liberty interest in his professional reputation and ability to pursue his chosen profession. OSU's termination, designation of Plaintiff as not eligible for rehire, and the subsequent publication of stigmatizing information foreclosed Plaintiff's ability to obtain employment in his field.

126. Defendants deprived Plaintiff of his protected interests without adequate procedural protections.

127. The disciplinary process was fundamentally unfair. OSU relied on altered and incomplete video evidence while the original footage was destroyed. OSU credited accusations that contradicted its own investigative findings. OSU denied Plaintiff a meaningful opportunity to confront the evidence against him or present exculpatory evidence.

128. Defendant Williams, as the decisionmaker, dismissed Plaintiff's complaints while permitting retaliatory complaints to proceed, denying Plaintiff a fair and impartial adjudication.

129. Defendant Hoyt participated in meetings and made employment threats that prejudiced the outcome before any fair hearing could occur.

130. Defendant Tempel, despite knowledge of the ongoing violations, failed to ensure that Plaintiff received fair treatment or adequate procedural protections.

131. The right of a public employee to procedural due process before deprivation of a protected property or liberty interest was clearly established at all relevant times.

132. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of procedural due process, lost his employment, suffered damage to his professional reputation, experienced emotional distress, and sustained economic harm.

133. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, and all other relief available under 42 U.S.C. Section 1983.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Lyberger respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. A declaration that Defendants' actions violated Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and 42 U.S.C. Section 1983.

B. An award of back pay, front pay, lost wages, and lost employment benefits, including but not limited to salary, bonuses, retirement contributions, and other forms of compensation.

C. An award of compensatory damages for emotional distress, humiliation, mental anguish, loss of professional reputation, and other non-economic harms.

D. An award of punitive damages against the individual Defendants for their willful, malicious, or recklessly indifferent conduct, as permitted by law.

E. Reinstatement to Plaintiff's former position or, in the alternative, an award of front pay in lieu of reinstatement.

F. Injunctive and equitable relief requiring Defendant The Ohio State University to remove any disciplinary findings from Plaintiff's personnel records, to rescind the designation that Plaintiff is not eligible for rehire, and to cease and correct discriminatory and retaliatory practices.

G. An order requiring Defendants to return Plaintiff's personal property, including coaching materials, professional clothing, and personal items wrongfully retained by The Ohio State University.

H. An award of reasonable attorney's fees, litigation expenses, and costs pursuant to Title VII, Title IX, and 42 U.S.C. Section 1988.

I. Pre-judgment and post-judgment interest as allowed by law.

J. Such other and further legal or equitable relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Chanda L. Brown*
Chanda L. Brown (0081076)
Sean L. Walton (0088401)
WALTON + BROWN LLP
395 E. Broad Street, Suite 200
Columbus, OH 43215
Telephone: 614-636-3476
cbrown@waltonbrownlaw.com
swalton@waltonbrownlaw.com

*Attorneys for Plaintiff*